# EXHIBIT A

# BakerHostetler

Baker&Hostetler LLP

200 Civic Center Drive, Suite 1200
Columbus, OH  43215-4138

T  614.228.1541
F  614.462.2616
www.bakerlaw.com

Rand L. McClellan
direct dial: 614.462.4782
rmcclellan@bakerlaw.com

July 31, 2020

**VIA FIRST CLASS MAIL**

Renovation Referral LLC
c/o Gabriel Alan Solomon Registered Agent
4844 NW 57th Manor
Coconut Creek, FL 33073

Gabriel Alan Solomon
4844 NW 57th Manor
Coconut Creek, FL 33073

Re:   *Kenneth Johansen, et. al. v. Blue Raven Solar, LLC, et al.*
      *United States District Court, Southern District of Ohio, Eastern Division*
      *Case No. 2:20-cv-2930-ALM-EPD*

Dear Mr. Solomon:

Enclosed please find the following, filed with the Clerk of Courts today:

- *Defendant Blue Raven Solar, LLC's Memorandum in Opposition to Plaintiff Kenneth Johansen's Motion for Leave to Take Discovery Prior to Entry of Final Judgment, the Declaration of Kenneth E. Payson in Support, and Exhibits A-D.*

Sincerely,

*Rand L. McClellan*

Rand L. McClellan

cc:   Brian K. Murphy, Esq., via email only
      Jonathan P. Misny, Esq., via email only
      Anthony Paronich, Esq., via email only
      Kenneth E. Payson, Esq., via email only
      James H. Moon, Esq., via email only

*Atlanta     Chicago     Cincinnati     Cleveland     Columbus     Costa Mesa     Dallas     Denver     Houston*
*Los Angeles     New York     Orlando     Philadelphia     San Francisco     Seattle     Washington, DC*

C:\Users\mfcantu\Desktop\2020-08-04 Service letter.docx

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| KENNETH JOHANSEN, individually and on behalf of a class of all persons and entities similarly situated, | Case No. 2:20-cv-2930-ALM-EPD |
| Plaintiff, | Chief Judge Algenon L. Marbley |
| v. | Chief Magistrate Judge Elizabeth A. Preston Deavers |
| BLUE RAVEN SOLAR, LLC, *et al.*, | |
| Defendants. | |

**DEFENDANT BLUE RAVEN SOLAR, LLC'S MEMORANDUM IN**
**OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO TAKE**
**DISCOVERY PRIOR TO ENTRY OF FINAL JUDGMENT**

**I.      INTRODUCTION**

Defendant Blue Raven Solar, LLC ("Blue Raven") opposes the Motion for Leave to Take Discovery Prior to Entry of Final Judgment (the "Motion") filed by Plaintiff Kenneth Johansen on July 14, 2020 (ECF No. 12).  The Motion should be denied because it is premature, unnecessary, and improper.

**II.     FACTUAL BACKGROUND**

On June 5, 2020, Mr. Johansen filed this putative class action lawsuit against Defendants Blue Raven, Renovation Referral, LLC ("Renovation"), and Renovation's owner, Gabriel Solomon (collectively, "Defendants"), based on purported violations of the Telephone Consumer Protection Act ("TCPA").  Mr. Johansen alleges that Renovation called his residential phone

number even though it was listed on the National Do-Not-Call Registry. (*See* Compl., ECF No. 1, ¶ 3.)[1]

This is the second putative class action lawsuit that Mr. Johansen's attorneys have pending against the same three Defendants for an alleged TCPA violation.  The first action was filed on September 18, 2019, in the United States District Court for the District of Nevada. (*See* Decl. of Kenneth E. Payson ("Payson Decl.") ¶ 3, Ex. A (Compl. in *Naiman v. Blue Raven Solar, LLC,* No. 2:19-cv-01643 (D. Nev.)).) Here, like there, Plaintiff alleges that Renovation—not Blue Raven—placed the calls at issue. (*Compare* Payson Decl. ¶ 3, Ex. A ¶ 3, *with* ECF No. 1 ¶ 3.) Here, like there, the claims against Blue Raven are based exclusively on a theory that Blue Raven is vicariously liable for Renovation's alleged calls, which the plaintiff alleges were efforts to generate sales leads for Blue Raven. (*Compare* Payson Decl. ¶ 3, Ex. A ¶¶ 47-63, *with* ECF No. 1 ¶¶ 34-50.) Here, like there, Blue Raven vigorously disputes the plaintiff's allegations that the underlying phone calls made by Renovation violated the TCPA as well as vicarious liability.[2]

On July 10, 2020, the Clerk entered default under Fed. R. Civ. P. 55(a) as to Renovation and Mr. Solomon after they failed to file a timely response to Mr. Johansen's Complaint. (ECF No. 11.)  Four days later, Mr. Johansen filed the present Motion seeking leave of Court to obtain discovery from third parties to "identify members of the putative class" prior to his anticipated motion for default judgment. (Mot. 2.)

---

[1] Plaintiff's Motion states, incorrectly, that statutory damages are "$500 per call." (Mot. 2.) The applicable provision of the TCPA provides for damages "up to" $500. 47 U.S.C. § 227(c)(5)(B).

[2] Blue Raven reserves all its rights to challenge the venue selected by Mr. Johansen for this action given the pending *Naiman* lawsuit, which involves a substantial overlap in parties, issues, and the proposed class.

### III.    LAW AND ARGUMENT

The Motion should be denied as premature under applicable rules, unnecessary to any motion for default judgment, and improper at this time.

*First*, the Motion is premature.  *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order.").  This case was filed on June 6, 2020; Blue Raven answered the complaint on July 31, 2020; and there has not been a Rule 26(f) conference.  (*See* Payson Decl. ¶ 2.)  Contrary to Mr. Johansen's suggestion, Rule 55(d)(2) provides no basis for taking early discovery.  (*See* Mot. 2.)  Indeed, other than referencing Rule 55(b)(2), Mr. Johansen's Motion does not identify any case law authority in support.  Rule 55(b)(2) merely allows "[t]he court" to "conduct hearings or make referrals" to "determine the amount of damages" or "investigate any other matter" once a party applies "to the court for a default judgment."  Nothing in this rule authorizes discovery upon the Clerk's entry of default outside the contours and in violation of Rule 26.[3]

*Second*, as a matter of established law, default judgment should not be entered against a defaulting defendant while a non-defaulting party continues to defend the action.  *See Kimberly v. Coastline Coal Corp.*, 857 F.2d 1474 (6th Cir. 1988) ("When a default is entered against one defendant in a multi-defendant case, the preferred practice is for the court to withhold granting a default judgment until the trial of the action on the merits against the remaining defendants."); *Hunter v. Shield*, No. 18-1097, 2019 U.S. Dist. LEXIS 207160, at *5 (S.D. Ohio Dec. 2, 2019)

---

[3] Plaintiff's Motion does not identify any basis for discovery.  Plaintiff is precluded from raising new arguments in any reply.  *See, e.g., Citizens Against Ruining the Env't v. EPA*, 535 F.3d 670, 675 (7th Cir. 2008) ("It is improper for a party to raise new arguments in a reply because it does not give an adversary adequate opportunity to respond."); *see also Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004).

(Sargus, J.) (holding that default judgment was premature because "[t]he instant matter is a multi-defendant action that has not been resolved on the merits"); *Hitachi Med. Sys. Am. v. Horizon Med. Grp.*, No. 07-2035, 2008 U.S. Dist. LEXIS 107934, at *9 (N.D. Ohio Jan. 28, 2008) ("when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted"). Here, the claims against all three Defendants are based on the same phone calls placed by Renovation, and Blue Raven intends to present its defense that the calls placed by Renovation did not violate the TCPA. (*See* Compl. ¶¶ 2-3, 27-32, 34-50 (regarding "Blue Raven's Liability for Renovation Referral's Conduct").) This is a prototypical multi-defendant case where liability of appearing and non-appearing defendants must be adjudicated together to avoid inconsistent judgments.

*Third*, Mr. Johansen's anticipated motion for default judgment on a "classwide" basis (Mot. 2) is improper because there is no certified class. Unless and until a class is certified pursuant to Rule 23, Mr. Johansen's case is an individual action. Thus, no basis exists for entry of default judgment on behalf of a class or discovery into class member information for that purpose. *See Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) ("[w]ith no class certification . . . no class damages can be awarded"); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) ("although a default judgment has the effect of deeming all factual allegations in the complaint admitted, it does not also have the effect of 'admitting' the independent legal question of class certification"); *Aleobua v. United Wellness Cmty., LLC*, No. 14-12932, 2014 U.S. Dist. LEXIS 159550, at *3 (E.D. Mich. Nov. 13, 2014) ("the Court must first determine whether class certification is appropriate before it may decide whether to

enter a default judgment in favor of the entire class . . . absent class certification, no default as to the (nonexistent) class can be made").

*Fourth*, the Motion seeks discovery that is forbidden by an order issued by the *Naiman* court, which is adjudicating a parallel proceeding filed by Plaintiff's attorney on behalf of an overlapping class of those Renovation called "on behalf of" Blue Raven.[4] (*See* Payson Decl., Ex. A (*Naiman* Compl.).) Although unstated in the Motion, the reason that Plaintiff knows the identity of the "third party calling vendor," i.e., the entity that he seeks to subpoena, is because his attorney subpoenaed that third party in the parallel litigation last year. (*See id.*, Ex. B (Subpoena).) Blue Raven filed a Motion for Protective Order to prevent that unnecessary and premature discovery. (*See id.*, Ex. C (Motion).) In response, the district court entered an order limiting discovery to the threshold vicarious liability issue until the parties have a chance to have that issue resolved on summary judgment. (*Id.*, Ex. D (Order).) The Court ordered the preservation of the third party's records, and Blue Raven has complied with the order. (*Id.* ¶ 7.) The Motion articulates no risk of potential loss of evidence that necessitates early discovery currently barred in the parallel case.

*Fifth*, even without the prior order, the discovery that Mr. Johansen seeks is improper and should not be allowed at this time. As explained in the Motion for Protective Order in the parallel action, the precise discovery that Mr. Johansen is seeking in this case, e.g., relating to the identity of putative class members called by Renovation, is not allowed under controlling law prior to a successful motion to certify a class. *See* Payson Decl., Ex. C at 19-20; *Oppenheimer*

---

[4] *Naiman* concerns alleged violations of the TCPA's restrictions on autodialed or artificial or prerecorded voice calls to cell phones. (*See* Payson Decl., Ex. A (*Naiman* Compl.) ¶ 65.) The proposed class in the present case, however, is not limited to cellular telephone numbers and instead encompasses all calls to "telephone numbers "(i.e., both residential **and** cell phones) made in violation of the Do Not Call restrictions of the TCPA. (Compl., ECF No. 1, ¶ 52.)

*Fund, Inc. v. Sanders*, 437 U.S. 340, 351-54 (1978) (outside the class-notice context, the

production of information that contains class members' identifying information normally was not

"within the scope of legitimate discovery"); *Dziennik v. Sealift, Inc.*, No. 05-4659, 2006 U.S.

Dist. LEXIS 33011, at *3 (E.D.N.Y. May 23, 2006) (denying production of unredacted

documents identifying class members); *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986

(S.D. Cal. 2005) (denying request for contact information of absent members during

precertification discovery); *see also* 2 McLaughlin on Class Actions § 11.1 (4th ed. 2007) ("to

avoid converting the class action mechanism into a tool to identify potential new clients, courts

ordinarily will not permit putative class counsel to obtain discovery of class members' identities

at the precertification stage").

     The Court should deny Mr. Johansen's request for discovery as premature, unnecessary

until a final determination on the merits of vicarious liability, and improper under applicable law

and the discovery order in the parallel action brought by Mr. Johansen's counsel against the same

Defendants.

**IV.   CONCLUSION**

     Plaintiff's Motion for Leave to Take Discovery should be denied.


Dated: August 4, 2020             Respectfully submitted,

                                 */s/ Rand L. McClellan*
                                 Kenneth E. Payson (WA Bar No. 26369)
                                 Admitted *Pro Hac Vice*
                                 Davis Wright Tremaine LLP
                                 920 Fifth Ave., Suite 3300
                                 Seattle, WA 98104
                                 (206) 757-8126
                                 *kennethpayson@dwt.com*

James H. Moon (CA Bar No. 268215)
Admitted *Pro Hac Vice*
Davis Wright Tremaine LLP
865 S. Figueroa St., Suite 2400
Los Angeles, CA 90017
(213) 633-6819
*jamesmoon@dwt.com*

Rand L. McClellan (SBN 0079266), Trial Attorney
Baker & Hostetler LLP
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43216-4138
(614) 228-1541
(614) 462-2616 (facsimile)
*rmcclellan@bakerlaw.com*

*Attorneys for Defendant*
*Blue Raven Solar, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2020, a copy of Defendant Blue Raven Solar, LLC's Memorandum in Opposition to Motion for Leave to Take Discovery Prior to Entry of Final Judgment, Declaration of Kenneth E. Payson in Support, and exhibits thereto were filed electronically. Notice of this filing will be served on parties who are registered users of the system by operation of the Court's electronic filing system, and by U.S. mail upon the following:

Defendant Renovation Referral LLC
c/o Gabriel Alan Solomon Registered Agent
4844 NW 57th Manor
Coconut Creek, FL 33073

Defendant Gabriel Alan Solomon
4844 NW 57th Manor
Coconut Creek, FL 33073

*/s/ Rand L. McClellan*
Baker & Hostetler LLP

*Attorneys for Defendant*
*Blue Raven Solar, LLC*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| KENNETH JOHANSEN, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BLUE RAVEN SOLAR, LLC, *et al.*,<br><br>Defendants. | Case No. 2:20-cv-2930-ALM-EPD<br><br>Chief Judge Algenon L. Marbley<br><br>Chief Magistrate Judge Elizabeth A. Preston Deavers |

## DECLARATION OF KENNETH E. PAYSON IN SUPPORT OF DEFENDANT BLUE RAVEN SOLAR, LLC'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO TAKE <u>DISCOVERY PRIOR TO ENTRY OF FINAL JUDGMENT</u>

I, Kenneth E. Payson, declare as follows:

1.      I am a partner at the law firm of Davis Wright Tremaine LLP and have been admitted *pro hac vice* to practice before this Court. I am an attorney of record for Defendant Blue Raven Solar, LLC ("Blue Raven") in this action and the parallel action pending in the United States District Court for the District of Nevada captioned *Naiman v. Blue Raven Solar, LLC,* No. 2:19-cv-01643 (D. Nev.). This declaration is based on my own personal knowledge, and if called as a witness, I could and would testify competently to the information set forth herein. I am providing this declaration in support of Blue Raven's concurrently filed Memorandum in Opposition to Plaintiff's Motion for Leave to Take Discovery Prior to Entry of Final Judgment.

2.      This action was filed on June 6, 2020; Blue Raven answered the complaint on July 31, 2020; Mr. Johansen and Blue Raven have not conducted a Rule 26(f) conference in this action.

3.     The lawsuit currently pending in the District of Nevada was filed on September 18, 2019, initially against only Blue Raven Solar.  Mr. Johansen's counsel Brian K. Murphy and Jonathan P. Misny appeared in that matter *pro hac vice*.  Mr. Johansen's counsel Anthony I. Paronich has also been actively involved in that case on behalf of Plaintiff Naiman although he is not counsel of record for him.  The operative complaint in that action was filed on July 8, 2020, against the same three defendants in this action, Blue Raven, Renovation Referral LLC, and Gabriel Solomon.

4.     Attached as **Exhibit A** is a true and correct copy of the operative First Amended Complaint filed in the *Naiman* action on July 8, 2020.

5.     Attached as **Exhibit B** is a true and correct copy of the subpoena served by Mr. Naiman on third-party YTel, Inc. in the *Naiman* action dated December 12, 2019, for, among other things, the dialing records of Renovation Referral LLC.

6.     Attached as **Exhibit C** is a true and correct copy of Blue Raven's Motion for Protective Order filed in the *Naiman* action on January 10, 2020.

7.     Attached as **Exhibit D** is a true and correct copy of the district court's minute order dated January 14, 2020, granting Blue Raven's request for phased discovery and limiting the first phase of discovery to vicarious liability issues.  The order also provided for the preservation of documents in YTel's possession.  Pursuant to the Court's order, YTel produced records requested in the subpoena to my office, and my office has preserved those records and produced redacted versions of those records to Mr. Johansen's counsel in the *Naiman* action.  My office also issued a litigation hold to YTel to preserve documents.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 4th day of August 2020 at Seattle, Washington.

_____
/s/ Kenneth E. Payson
Kenneth E. Payson

# Exhibit A

Case 2:20-cv-02116-JAD-EJY   Document 22-2   Filed 09/08/20   Page 14 of 59

Case: 2:20-cv-02930-ALM-ERD Doc #: 20-2 Filed: 08/04/20 Page: 20 of 15 PAGEID #: 89
Case 2:19-cv-01643-JAD-EJY   Document 42   Filed 07/08/20   Page 1 of 6

Ogonna Brown, Esq.
Nevada Bar No. 7589
OBrown@lrrc.com
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Tel:    702.949.8200
Fax:    702.949.8398

*Attorneys for Plaintiff Louis Naiman*

Brian K. Murphy, Esq.
murphy@mmmb.com
Jonathan P. Misny, Esq.
misny@mmmb.com
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Tel: 614.488.0400
Fax: 614.488.0401

*Pro Hac Vice*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| LOUIS NAIMAN, on behalf of himself and others similarly situated, | CIVIL ACTION FILE NO. 2:19-cv-1643-JAD-EJY |
| Plaintiff, | |
| v. | **FIRST AMENDED COMPLAINT – CLASS ACTION** |
| BLUE RAVEN SOLAR, LLC and RENOVATION REFERRAL LLC and GABRIEL ALAN SOLOMON | **JURY TRIAL DEMANDED** |
| Defendants. | |

**Preliminary Statement**

1.     Plaintiff Louis Naiman ("Plaintiff" or "Mr. Naiman") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.     Mr. Naiman alleges that Blue Raven Solar, LLC ("Blue Raven Solar") commissioned automated telemarketing calls to Mr. Naiman and other putative class members without their prior express written consent.

3.     Mr. Naiman alleges that a company that Renovation Referral LLC ("Renovation Referral"), which is owned and operated by Gabriel Alan Solomon made the automated telemarketing calls at issue.

109140932.1

4.      Mr. Naiman and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Mr. Naiman brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

5.      A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6.      Plaintiff Louis Naiman currently resides in Nevada.

7.      Defendant Blue Raven Solar, LLC is a Utah limited liability corporation with its principal place of business in Utah.  Blue Raven Solar engages in telemarketing conduct into this district and others throughout the nation in order to market its products and services for installation in residences in those locations.

8.      Defendant Renovation Referral LLC is a Florida limited liability corporation with its principal place of business in Florida.  Renovation Referral engages in telemarketing conduct into this district, as it did with the Plaintiff, in order to market its products and services for installation in residences in those locations.

9.      Defendant Garbiel Alan Solomon is the owner and operator of Renovation Referral.

**Jurisdiction & Venue**

10.     The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims*, 132 S. Ct. 740.

11.     The Court has personal jurisdiction over Blue Raven Solar because it engaged in telemarketing conduct into this district by commissioning a third party to make automated telemarketing calls into this district in order to market its products and services for installation in Nevada residences, and Plaintiff received such an automated telemarketing call in this district.

109140932.1                                     - 2 -

Case 2:20-cv-02116-JAD-EJY   Document 22-2   Filed 09/08/20   Page 16 of 59

Case: 2:20-cv-02930-ALM-ERD Doc #: 20-2 Filed: 08/04/20 Page: 24 of 15  PAGEID #: 91
Case 2:19-cv-01646-JAD-EJY   Document 42   Filed 07/08/20   Page 3 of 14

1   The Plaintiff has personal jurisdiction over the remaining defendants because they engaged in the

2   actual automated calling into this District.

3         12.   Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the

4   events or omissions giving rise to the claim occurred in this district, as the automated call at issue

5   was made to and received by the Plaintiff in this district.

6   **TCPA Background**

7         13.   In 1991, Congress enacted the TCPA to regulate the explosive growth of the

8   telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing …

9   can be an intrusive invasion of privacy [.]"  Telephone Consumer Protection Act of 1991, Pub. L.

10   No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

11
   The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones

12         14.   The TCPA makes it unlawful "to make any call (other than a call made for

13   emergency purposes or made with the prior express consent of the called party) using an

14   automatic telephone dialing system or an artificial or prerecorded voice … to any telephone

15   number assigned to a … cellular telephone service."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The

16   TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C.

17   § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

18         15.   According to findings by the Federal Communication Commission ("FCC"), the

19   agency Congress vested with authority to issue regulations implementing the TCPA, such calls

20   are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater

21   nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and

22   inconvenient.

23         16.   The FCC also recognized that "wireless customers are charged for incoming calls

24   whether they pay in advance or after the minutes are used."  *In re Rules and Regulations*

25   *Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18

26   FCC Rcd. 14014, 14115, ¶ 165 (2003).

27

28

17.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

The Growing Problem of Automated Telemarketing

18.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

19.     "The FTC receives more complaints about unwanted calls than all other complaints combined."    Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

20.     In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016.  Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

21.     *The New York Times* reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing.   Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-many-robocalls-heres-what-you-can-do-about-them-1530610203.

22.     According to a respected robocall watch site, robocalls have increased by a whopping 494% in a four year span: from 8.9 billion in the last three quarters of 2015 to 43 billion in the same nine months of 2019. See YouMail Robocall Index, Historical Robocalls by Time, available at https://robocallindex.com/history/time/ (accessed March 5, 2020).

23.     Of the 58.5 billion robocalls made in 2019, YouMail reports that over half of these calls—56%—were scam calls, spoofed calls, or telemarketing calls. *Id.*

Individual Officer Liability under the TCPA

24.     Mr. Solomon is the owner and operator of Renovation Referral and is liable for its conduct.

25.     Under the TCPA, an individual such as Mr. Solomon, may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person.*

See 47. U.S.C. § 217 (emphasis added).

26.     When considering individual officer liability under the TCPA, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable

1    under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS

2    159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be

3    individually liable for violating the TCPA "where they 'had direct, personal participation in or

4    personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal

5    Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a

6    corporation could avoid individual liability, the TCPA would lose much of its force.").

7

8         27.     Mr. Solomon personally participated in the actions complained of by (a) selecting

9    some of the phone numbers that would be called; (b) choosing the automated equipment that

10   would be used; (c) personally loading the lists of numbers and sending the calls at issue; and (d)

11   personally authorizing any other conduct of Renovation Referral.

12

13                                    **Factual Allegations**

14   <u>Call to Mr. Naiman</u>

15        28.     Plaintiff Naiman is a "person" as defined by 47 U.S.C. § 153(39).

16        29.     Mr. Naiman's telephone number, (707) 832-XXXX, is registered to a cellular

17   telephone service.

18        30.     On April 8, 2019 at 11:01 AM, Mr. Naiman received an automated telemarketing

19   call to his cellular telephone number from the caller ID (707) 210-0004.

20        31.     When Mr. Naiman answered the call, there was a distinctive click and a pause

21   before the telemarketing sales representative came on the line.

22        32.     This click and pause is a telltale sign of a predictive dialer.  The click and pause

23   signifies the algorithm of the predictive dialer operating.  The predictive dialer dials thousands of

24   numbers at once and only transfers the call to a live agent once a human being is on the line.  As a

25   result, this telemarketing activity shifts the burden of wasted time to call recipients such as Mr.

26   Naiman.

27

28   109140932.1                              - 6 -

33. A predictive dialer is an automatic telephone dialing system ("ATDS") as that term is defined by the TCPA.

34. Because of the predictive dialer, Mr. Naiman was greeted with dead air when he answered the call before a live person finally came on the line.

35. The Caller ID for the call, (707) 210-0004, is a non-working "spoofed" number.

36. The fact that the Caller ID was spoofed is further evidence of the use of an ATDS, as it typically takes a computer dialing system to manipulate the Caller ID that will display on the call recipient's phone.

37. Discovery has revealed that this call was made using the Ytel predictive dialer.

38. The Ytel predictive dialer has

39. A telemarketing sales representative named "Ryan" came on the line and, using a scripted sales pitch, asked Mr. Naiman a series of questions to determine his interest in and qualifications for solar panel installation for his residence.

40. "Ryan" told Mr. Naiman that his company was called "Renew Solar Power," although upon further research there do not appear to be any entities doing business in or engaging in telemarketing into the United States using that name.

41. Upon verifying Mr. Naiman's qualifications, "Ryan" directly transferred the call to Blue Raven Solar while Mr. Naiman remained on the line.

42. "Ammon Musselman" then came on the line and informed Mr. Naiman that the name of his company was "Blue Raven Solar" and proceeded to attempt to sell Mr. Naiman Blue Raven Solar products and services for installation in his residence.

43. Musselman gave Mr. Naiman the website address of BlueRavenSolar.com, which is Blue Raven Solar's website, and informed Plaintiff that he was located in Las Vegas, Nevada. He provided Mr. Naiman his direct phone number of (702) 710-1287.

44. Mr. Naiman provided an email address so that he could confirm the identity of the caller. He proceeded to receive an email from Musselman listing Blue Raven Solar along with his contact information.

109140932.1                                    - 7 -

Case 2:20-cv-02116-JAD-EJY    Document 22-2    Filed 09/08/20    Page 21 of 59
Case: 2:20-cv-02930-ALM-ERD Doc #: 20-2 Filed: 08/01/20 Page: 8 of 15 PAGEID #: 96
Case: 2:19-cv-01640-JRD-EJY Document 42 Filed 07/08/20 Page 8 of 61

45.    Mr. Naiman is not a customer of Defendant or Renovation Referral and has not consented to receive telemarketing calls prior to the receipt of these calls.

46.    Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls, and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Plaintiff and the class.

**Blue Raven Solar's Liability for Renovation Referral's Conduct**

47.    For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

48.    In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

49.    In fact, the Federal Communication Commission has instructed that sellers such as Blue Raven Solar may not avoid liability by outsourcing telemarketing to third parties, such as Renovation Referral:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

109140932.1

Case: 2:20-cv-02930-ALM-EPD Doc #: 30-2 Filed: 08/04/20 Page: 20 of 15 PAGEID #: 97
Case 2:19-cv-01643-JAD-PDY   Document 42   Filed 07/08/20   Page 9 of 14

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6588, ¶ 37 (2013) ("May 2013 FCC Ruling") (internal citations omitted).

50.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

51.     The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586, ¶ 34.

52.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Id.* at 6592, ¶ 46.

53.     Blue Raven Solar is liable for the telemarketing calls that were initiated by Renovation Referral before being transferred to Blue Raven Solar.

54.     Blue Raven Solar hired Renovation Referral to originate new business using automated telemarketing calls.

---

[1] May 2013 FCC Ruling, 28 FCC Rcd. at 6574, ¶ 1.

55. Blue Raven Solar could have restricted Renovation Referral from using automated telemarketing, but it did not.

56. Blue Raven Solar also accepted the benefits of "Renew Solar Power's" illegal telemarketing by accepting live transfers of leads directly from "Renew Solar Power," despite the fact that those leads were generated through illegal telemarketing.

57. Blue Raven Solar had absolute control over whether, and under what circumstances, it would accept a customer.

58. Blue Raven Solar determined the parameters and qualifications for customers to be transferred to a live Blue Raven Solar representative and required Renovation Referral to adhere to those requirements.

59. Blue Raven Solar knew (or reasonably should have known) that Renovation Referral was violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct. Any reasonable seller that accepts telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

60. By having Renovation Referral initiate the calls on its behalf to generate new business, Blue Raven Solar "manifest[ed] assent to another person ... that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

61. Renovation Referral transferred customer information directly to Blue Raven Solar. Thus, the company that Blue Raven Solar hired has the "ability ... to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling.

62. Blue Raven Solar approved the Renovation Referral script for determining whether a customer was eligible to be transferred directly to speak with a Blue Raven Solar employee, as discussed in the May 2013 FCC Ruling.

109140932.1

- 10 -

63.   Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." *Id.* at 6592-593, ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593, ¶ 46.

### Class Action Allegations

64.   As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

65.   The class of persons Plaintiff proposes to represent is tentatively defined as:

All persons within the United States to whom: (a) Either Defendant, and/or a third party acting on its behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using the Ytel or similar dialing system; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

66.   Excluded from the class are counsel, the Defendants, any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

67.   The class as defined above is identifiable through phone records and phone number databases.

68.   The potential class members number at least in the thousands. Individual joinder of these persons is impracticable.

69.   Plaintiff is a member of the class.

70.   There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

a.   Whether Defendants violated the TCPA by using automated calls to contact putative class members' cellular telephones;

Case 2:20-cv-02116-JAD-EJY   Document 22-2   Filed 09/08/20   Page 25 of 59

Case: 2:20-cv-02930-AJM-EJAD-DoY #: 30-2 Filed: 08/04/20 Page: 13 of 15 PAGEID #: 100
Case 2:19-cv-016M3-JAD-EJY   Document 42   Filed 07/08/20   Page 12 of 14

b.   Whether the Defendants had the call recipients' prior express written consent to make the call;

c.   Whether Defendant is vicariously liable for the telemarketing conduct of its agent(s); and

d.   Whether the Plaintiff and the class members are entitled to statutory damages because of Defendant's actions.

71.   Plaintiff's claims are typical of the claims of class members.

72.   Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

73.   Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.   The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

74.   The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

75.   Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**Legal Claims**

**Count One:**
**Violation of the TCPA's Automated Call Provisions**

76.   Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

77.   The Defendants violated the TCPA (a) by initiating automated telephone solicitations to cellular telephone numbers, or (b) by the fact that others made those calls on its behalf.  *See* 47 U.S.C. § 227(b).

109140932.1                                    - 12 -

78. The Defendants' violations were willful and/or knowing.

79. Plaintiff and members of the class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

**Relief Sought**

WHEREFORE, for himself and all class members, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf, from making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

B. Because of Defendants' violations of the TCPA, Plaintiff Naiman seeks for himself and the other putative class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

C. Plaintiff and members of the class are also entitled to and do seek injunctive relief prohibiting Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

D. An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is a proper representative of the class, and appointing the lawyers and law firms representing Plaintiff as counsel for the class.

E. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

DATED this 8th day of July, 2020.

1                               MURRAY MURPHY MOUL + BASIL LLP

2

3                       By: */s/ Brian K. Murphy*

                                 Brian K. Murphy (admitted *pro hac vice*)

4                                 murphy@mmmb.com

                                 Jonathan P. Misny (admitted *pro hac vice*)

5                                 misny@mmmb.com

                                 1114 Dublin Road

6                                 Columbus, OH 43215

                                 Tel.: 614.488.0400

7                                 Fax: 614.488.0401

8                                 Ogonna Brown, Bar No. 7589

                                 OBrown@lrrc.com

9                                 3993 Howard Hughes Parkway, Suite 600

                                 Las Vegas, NV  89169

10                               Tel.: 702.949.8200

                                 Fax: 702.949.8398

11

12                               *Attorneys for Plaintiff*

13

14                          <u>CERTIFICATE OF SERVICE</u>

15      I hereby certify that on July 8, 2020, I caused the foregoing to be electronically filed with

16 the Clerk of Court using the CM/ECF system, which will send notification of such filing to all

17 counsel of record.

18

19                               */s/ Brian K. Murphy*

                                 Brian K. Murphy

20

21

22

23

24

25

26

27

28

# Exhibit B

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Nevada

| | | |
|---|---|---|
| LOUIS NAIMAN | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  2:19-cv-1643 |
| BLUE RAVEN SOLAR, LLC | ) | |
| *Defendant* | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                            Ytel, Inc.

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A, attached.

| Place: Direct Legal Support, Inc., 1541 Wilshire Blvd., Suite 550, Los Angeles, CA 90017, or directly to undersigned counsel including electronically at misny@mmmb.com | Date and Time: 01/06/2020 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  12/12/19

CLERK OF COURT

                                                    OR

_____                    _____
*Signature of Clerk or Deputy Clerk*                        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Plaintiff
Louis Naiman                                                    , who issues or requests this subpoena, are:

Jonathan Misny, Murray Murphy Moul + Basil, 1114 Dublin Rd Columbus OH 43215, misny@mmmb.com, 614.488.0400

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   2:19-cv-1643

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## INSTRUCTIONS

1.    You are required to search not only for hard copy documents, but for electronically generated, maintained, or stored information, including data that exist on your computers' hard drives, on computer servers to which you have access, in email accounts, in text messaging accounts, and all other places in which responsive electronic data may be stored.

2.    Where possible, all electronically generated, maintained, or stored information should be produced in its native format and in a format compatible to litigation-support databases and review systems.  Where possible, such documents should contain searchable text and searchable metadata in a load file format.  File fidelity and resolution should not be downgraded; for instance, electronic files should not be printed and then scanned.

## DEFINITIONS

1.    When used in these Requests, "Dialer" means Gabe Solomon, Joseph Kairalla, and/or Renovation Referral LLC, including any subsidiaries or affiliated enterprises, and its officers, directors, and employees.

2.    When used in these Requests, "you" or "your" (or synonyms thereof) mean Ytel, Inc., 94 Icon, Foothill Ranch, CA 92610, including any subsidiaries or affiliated enterprises, and its officers, directors, and employees.

## REQUESTS

**Request No. 1:**  All documents reflecting any call (including attempted call) made by the Dialer on your system since January 1, 2016.  A complete answer will include at least the following:

      A.       Information for the calls themselves, including the phone number called, the date and time of the call, and the result of the call (e.g., no answer, message left, "spoke with John Doe and updated business data," etc.);

      B.       Information on what campaign or which customer each call was made for; and

      C.       All responses to the call, whether by live voice, IVR, SMS, or otherwise.

**Request No. 2:**  All manuals regarding the capacity of the dialing system used to transmit outbound telephone calls identified in response to Request No. 1.

**Request No. 3:**  Documents that identify any recorded message (including but not limited to the audio files of any such messages) sent via calls responsive to Request No. 1.

**Request No. 4:**  Documents that identify the dialing mode or option the dialing system was in when it made each of the calls identified in response to Request No. 1.

**Request No. 5:**  Communications with any third party concerning the litigation captioned on the subpoena.

# Exhibit C

Kenneth E. Payson (admitted *pro hac vice*)
Davis Wright Tremaine LLP
920 Fifth Ave., Suite 3300
Seattle, WA 98104
Telephone:  (206) 757-8126
*kennethpayson@dwt.com*

James H. Moon (admitted *pro hac vice*)
Davis Wright Tremaine LLP
865 S. Figueroa St., Suite 2400
Los Angeles, CA 90017
Telephone:  (213) 633-6819
*jamesmoon@dwt.com*

Jeff Silvestri (Nevada Bar No. 5779)
McDonald Carano LLP
2300 W. Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Telephone:  (702) 873-4100
*jsilvestri@mcdonaldcarano.com*

Attorneys for Defendant Blue Raven Solar, LLC

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| LOUIS NAIMAN, an individual, on behalf of himself and others similarly situated,<br><br>           Plaintiff,<br><br>      vs.<br><br>BLUE RAVEN SOLAR, LLC, a Utah limited liability corporation; DOES 1 through X, inclusive; and ROE CORPORATIONS 1 through X, inclusive,<br><br>           Defendants. | No. 2:19-cv-01643-JAD-EJY<br><br>**DEFENDANT BLUE RAVEN SOLAR, LLC'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**[*Declaration of James H. Moon Filed Concurrently*]**<br><br>Action Filed:     September 18, 2019 |

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
(206) 622-3150 FAX: (206) 757-7700

**PLEASE TAKE NOTICE** defendant Blue Raven Solar, LLC ("Blue Raven") hereby
moves the Court for an order initially limiting discovery in this action (1) to the threshold,
narrow, and dispositive issue of Blue Raven's purported "vicarious liability" for its purported
agent's violations of the Telephone Consumer Protection Act ("TCPA"), or (2) in the alternative,
to issues relating to the individual claims of plaintiff Louis Naiman or those necessary to
determine Mr. Naiman's anticipated motion for class certification.

This motion is made on the grounds that phased discovery may obviate the need for
extensive and costly class discovery, has no potential to prejudice Mr. Naiman, and will result in
the efficient and orderly resolution of this action. The Court therefore should limit discovery in
this action—including the (1) subpoenas issued by Mr. Naiman to third parties Ytel, Inc., and
Renovation Referral, LLC, and (2) discovery requests issued by Mr. Naiman to Blue Raven—to
these discrete threshold issues.

This motion is based on this notice and motion; the attached memorandum; Appendix A,
which sets forth Mr. Naiman's discovery requests and responses verbatim; the concurrently filed
Declaration of James H. Moon; all pleadings, records, and files in this action; and such evidence
and argument as may be presented at or before the hearing on this motion.

Dated: January 10, 2020

/s/ Kenneth E. Payson
Kenneth E. Payson (admitted *pro hac vice*)
Davis Wright Tremaine LLP
920 Fifth Ave., Suite 3300
Seattle, WA 98104
(206) 757-8126
*kennethpayson@dwt.com*

James H. Moon (admitted *pro hac vice*)
Davis Wright Tremaine LLP
865 S. Figueroa St., Suite 2400
Los Angeles, CA 90017
(213) 633-6819
*jamesmoon@dwt.com*

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
(206) 622-3150 FAX: (206) 757-7700

2

Jeff Silvestri (Nevada Bar No. 5779)
McDonald Carano LLP
2300 W. Sahara Avenue, Suite 1200
Las Vegas, NV 89102
(702) 873-4100
jsilvestri@mcdonaldcarano.com

*Attorneys for Defendant Blue Raven Solar, LLC*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
(206) 622-3150 FAX: (206) 757-7700

3

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................ 5

II.   FACTUAL BACKGROUND ............................................................................... 6

    A.    Mr. Naiman Sues Blue Raven Based on a Vicarious Liability Theory ................. 6

    B.    Blue Raven's Relationship with Renovation ........................................................ 6

    C.    Blue Raven Proposes a Phased Discovery Schedule ........................................... 7

    D.    Before the Scheduling Conference, Numerous Discovery Issues Arise ................ 7

    E.    The Parties Unsuccessfully Meet and Confer ...................................................... 8

III.  ARGUMENT ...................................................................................................... 9

    A.    The Court Should Limit Discovery to Threshold and Dispositive Vicarious
        Liability Issues. ................................................................................................... 9

        1.    Mr. Naiman's Action Presents Threshold Dispositive Vicarious
            Liability Issues. ........................................................................................ 11

        2.    Mr. Naiman's Discovery Goes Well Beyond the Dispositive
            Vicarious Liability Issues in this Case. ..................................................... 13

        3.    Mr. Naiman Would Suffer No Prejudice by Phasing Discovery. ............. 15

    B.    In the Alternative, the Court Should Limit Discovery to Issues Relevant to
        Plaintiff's Individual Claims or Class Certification ............................................ 15

        1.    Before Certification, Plaintiffs Have a Limited Right to Discovery. ....... 16

        2.    Plaintiff's Discovery Mostly Seeks Information and Documents
            Irrelevant to His Individual Claims or Class Certification Issues ............. 17

IV.   CONCLUSION ................................................................................................... 20

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
(206) 622-3150 FAX: (206) 757-7700

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

I.     **INTRODUCTION**

This putative class action is premised exclusively on Defendant Blue Raven Solar, LLC's ("Blue Raven") purported vicarious liability for a third party's alleged violation of the Telephone Consumer Protection Act ("TCPA"). In particular, Plaintiff Louis Naiman's case depends on Blue Raven being legally responsible based on agency principles for an allegedly unauthorized phone call a third party made to him. Unless Mr. Naiman's vicarious liability theory survives Blue Raven's anticipated motion for summary judgment, and Mr. Naiman successfully moves to certify a class, this action involves a single phone call made by a single vendor of Blue Raven and a claim for up to $1,500 in statutory damages. Discovery should be limited to reflect the present scope of this action.

Given the threshold issues this action presents, on December 10, 2019, Blue Raven proposed a phased approach to discovery to address the threshold issues of vicarious liability in anticipation of Blue Raven's early motion for summary judgment. (*See* Discovery Plan, ECF No. 17, at 4-7.) Mr. Naiman disagreed with the phasing proposal and proposed a schedule allowing discovery into all potential issues relating to the merits and class members' individual claims. The Court set a hearing for January 14, 2020, to discuss the competing discovery plans. (*See* Order, ECF No. 22.) Before the hearing, Mr. Naiman served discovery requests and subpoenas seeking information and documents from Blue Raven and third parties—such as names, addresses, calling records, and other details concerning putative class members and their individual claims with no relationship to the threshold issue of whether Blue Raven may be held vicariously liable for a vendor's conduct, Mr. Naiman's individual claims, or class certification issues. (*See* Moon Decl., Exs. A, C-D.) After further unsuccessful meet-and-confer efforts, this motion was filed to resolve the issue to hopefully avoid unduly burdening the third parties and Blue Raven with potentially unnecessary discovery. (*See id.* ¶¶ 7-9.)

Given this continuing and fundamental disagreement over how discovery should proceed at this initial stage of this litigation, Blue Raven seeks a protective order limiting discovery to

DAVIS WRIGHT TREMAINE LLP<br>920 Fifth Avenue, Suite 3300<br>Seattle, Washington 98104-1610<br>(206) 622-3150 FAX: (206) 757-7700

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
(206) 622-3150 FAX: (206) 757-7700

1  (1) threshold vicarious liability issues that will be the topic of Blue Raven's summary judgment

2  motion, or (2) in the alternative, to issues relating to Mr. Naiman's individual claims or class

3  certification issues until the Court has a chance to rule on class certification.  This orderly

4  structuring of discovery may obviate the need for further costly and time-consuming court

5  proceedings or discovery into class certification or class-wide merits issues and provide for the

6  efficient and early resolution of this entire case.  A protective order should be entered to prevent

7  this unnecessary harm.  There is no potential prejudice to Mr. Naiman as Blue Raven proposed to

8  segregate and protect evidence potentially relevant to claims of putative class members during

9  the vicarious liability phase of this action.

10  **II.  FACTUAL BACKGROUND**

11      **A.  Mr. Naiman Sues Blue Raven Based on a Vicarious Liability Theory**

12      Mr. Naiman initiated this action against Blue Raven on September 18, 2019.  (*See*

13  Compl., ECF No. 1.)  The crux of Mr. Naiman's complaint is that he received an automated

14  telemarketing call without his prior express written consent in violation of the TCPA.  (*Id.* ¶ 22.)

15  It is undisputed that Blue Raven did not place the call on which Mr. Naiman moors his putative

16  class-action complaint.  (*Id.* ¶¶ 30-32.)  Instead, as he concedes, Mr. Naiman's theory of liability

17  is that he received a telephone call from a third-party entity called "Renew Solar Power," also

18  known as Renovation Referral, LLC ("Renovation"), and seeks to hold Blue Raven vicariously

19  liable for the third party's actions based on an "agency" theory.  (*Id.* ¶¶ 37-53.)

20      **B.  Blue Raven's Relationship with Renovation**

21      Blue Raven offers solar panel products to homeowners and utilizes lead-referral vendors

22  like Renovation in addition to its own organic lead generation.  Renovation entered into a Master

23  Service Agreement with Defendant as of February 10, 2018, to provide "live transfers" of

24  potential qualified customers of Defendant's solar power products.  (*See* Moon Decl., Ex. B at 6,

25  p. 29.)  That contract required Renovation to refer to Blue Raven only qualifying customers who

26  have expressed interest in speaking to a residential solar expert about residential solar products.

27  (*Id.*)  Once Renovation determined during a preliminary telephone call that a prospect fell within

1    the preset criteria, the prospect was notified that he or she would be transferred over to a live

2    representative of a participating solar contractor.  (*Id.*)

3           Renovation contracted to provide its services to Defendant as an independent contractor

4    and represented that it would fully comply with all applicable laws, including the TCPA, in

5    seeking leads or prospects for Defendant.  (*Id.*)  Renovation further contractually agreed to call

6    only those who had consented to be called and not to use automated dialing systems.  (*Id.*)  To

7    the extent Renovation called Mr. Naiman without his consent and through use of an automated

8    system as Mr. Naiman's complaint alleges, it did so outside of the agreed-upon scope of services

9    and in direct violation of its express contractual obligations to Blue Raven.

10          **C.      Blue Raven Proposes a Phased Discovery Schedule**

11          During their Rule 26(f) conference, counsel for the parties discussed competing schedules

12   to govern discovery in this putative class action.  Blue Raven proposed a phased approach to

13   discovery to address initially the threshold issues of vicarious liability in anticipation of Blue

14   Raven's early motion for summary judgment.  (*See* Discovery Plan, ECF No. 17 at 4-7.)  As

15   Blue Raven explained, an early resolution of that vicarious liability issue may obviate the need

16   for further costly and time-consuming court proceedings or discovery into class certification or

17   merits issues, and provide for the efficient resolution of this action.  (*Id.* at 5.)  To avoid any

18   potential prejudice to Mr. Naiman, Blue Raven proposed to segregate and protect evidence

19   potentially relevant to claims of putative class members during the vicarious liability phase of

20   this action.  (*Id.*)  Mr. Naiman disagreed with the phasing proposal and rejected the segregation

21   compromise.  (*Id.* at 7-8.)  On December 10, 2019, the parties submitted a joint report setting

22   forth their respective positions.  Pursuant to the parties' stipulation, the Court set a scheduling

23   conference for January 14, 2020, to discuss the competing proposals.  (*See* Order, ECF No. 22.)

24          **D.      Before the Scheduling Conference, Numerous Discovery Issues Arise**

25          Prior to the January 14, 2020 scheduling conference, Mr. Naiman served discovery

26   requests in this action on Blue Raven and subpoenas on third parties.  Mr. Naiman purported to

27   serve document requests and interrogatories on Blue Raven on November 27, 2019.  (*See* Moon

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
(206) 622-3150 FAX: (206) 757-7700

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
(206) 622-3150 FAX: (206) 757-7700

1  Decl., Ex. A.)  Blue Raven responded on December 27, 2019, stating that it would produce

2  information relating to Mr. Naiman's individual claims and vicarious liability issues, but

3  objected to broader discovery into, e.g., information regarding individual putative class

4  members. (*See id.*, Ex. B.)  Mr. Naiman also informed Blue Raven that he would serve

5  subpoenas on third parties (1) Renovation and (2) Ytel, its telephone-dialing vendor. (*See id.*,

6  Exs. C-D.)  The subpoenas requested the production of documents from Renovation and Ytel by

7  January 6, 2020 and January 13, 2020, respectively.  (*See id.*, Exs. C-D.)

8        The discovery requests and subpoenas each seek information and documents relating to

9  issues beyond the threshold vicarious liability issue, Mr. Naiman's individual claims, and class

10  certification. (*See* App'x A (requests and responses verbatim).)  For instance, Mr. Naiman

11  sought from Blue Raven information about lead-referral vendors besides the one that contacted

12  Mr. Naiman, and information about calls placed to putative class members. (*See, e.g.*, Moon

13  Decl., Ex. A at Interrogatory Nos. 2-4, p. 14 (seeking information about all vendors); *id.*, Ex. A

14  at Req. for Production Nos. 6, 8, pp. 17-18 (seeking information regarding calls made to putative

15  class members).)  The subpoena to Ytel sought, e.g., "[a]ll documents reflecting any call" made

16  by Renovation identifying the potential class members in this action.  (*Id.*, Ex. C at Schedule A

17  at Req. No. 1, p. 81.)  Likewise, the subpoena to Renovation sought all documents identifying

18  every call made by Renovation to generate leads for Blue Raven (including names, addresses,

19  emails, and phone numbers for putative class members), and all written consents for those calls

20  for all putative class members.  (*Id.*, Ex. D at Schedule A at Req. Nos. 1, 5, pp. 87-88.)

21        **E.    The Parties Unsuccessfully Meet and Confer**

22        Given the common issues affecting the proper scope of Mr. Naiman's discovery requests

23  and pending subpoenas, Blue Raven filed the present motion.  Counsel for Blue Raven met and

24  conferred with counsel for Mr. Naiman regarding the issues raised in this motion on January 2,

25  2020, but could not resolve their differences. (*See* Moon Decl. ¶ 8; *see also* L.R. 26.7.)

26  Renovation and Ytel agreed to abide by the Court's decision on Blue Raven's motion in

27  responding to the subpoena. (*See* Moon Decl. ¶ 9.)

**III.   ARGUMENT**

The Court has broad discretion under Federal Rule of Civil Procedure 26(c) to manage discovery and to enter orders to ensure that discovery proceeds in a sensible fashion to minimize the costs and burdens on the parties. *See Crawford-El v. Britton*, 523 U.S. 574, 598-99 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery."); *Little v. Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) ("The district court has wide discretion in controlling discovery."); *Henderson v. Prop. & Cas. Ins. Co.*, 2012 U.S. Dist. LEXIS 121933, at *17 (D. Nev. Aug. 27, 2012) (ordering phasing of discovery pending dispositive motions based on its "broad discretion"); *Bastida v. Nat'l Holdings Corp.*, No. 16-388, 2016 U.S. Dist. LEXIS 178316, at *5 (W.D. Wash. Dec. 16, 2016) ("the Court may phase discovery to avoid waste and to promote efficiency"). In particular, "[t]he court may, for good cause, issue an order . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c); *see also* Fed. R. Civ. P. 45.

As explained below, good cause exists for the Court to initially limit discovery in this action to (1) the threshold vicarious liability issues in advance of Blue Raven's motion for summary judgment or, in the alternative, (2) Mr. Naiman's individual claims or class certification issues.

**A.   The Court Should Limit Discovery to Threshold and Dispositive Vicarious Liability Issues.**

Blue Raven proposes that the Court initially limit discovery in this action to the narrow vicarious liability issue. As explained in its discovery plan, Blue Raven intends to file an early motion for summary judgment on this issue, which may obviate the need for any further discovery in this action. (*See* ECF No. 17 at 4-7.) Mr. Naiman's early discovery requests seek information well beyond the narrow issue of vicarious liability.

As a general matter, "[w]here the necessary factual issues . . . may be resolved without discovery, it is not required." *Doninger v. Pac. N.W. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) (quotes and citation omitted). "The decision to bifurcate discovery is a matter committed

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
(206) 622-3150 FAX: (206) 757-7700

9

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
(206) 622-3150 FAX: (206) 757-7700

1   to the discretion of the trial court as it has the inherent power to control its docket." *Brittingham*

2   *v. Cerasimo, Inc.*, No. 08-216, 2008 U.S. Dist. LEXIS 99076, at *2 (N.D. Ind. Dec. 8, 2008).

3   "Where bifurcation will preserve substantial judicial and party resources by permitting the

4   segregated disposition of threshold issues, the court may stay any and all discovery that pertains

5   exclusively to the bifurcated claims." *See Aerojet Rocketdyne, Inc. v. Glob. Aero., Inc.*, No. 17-

6   1515, 2018 U.S. Dist. LEXIS 143824, at *17 (E.D. Cal. Aug. 23, 2018).

7   "In addition to its discretion to bifurcate proceedings, Federal Rule of Civil Procedure 26

8   'vests the trial judge with broad discretion to tailor discovery narrowly and tailor the sequence of

9   discovery.'" *Advertise.com, Inc. v. AOL, LLC*, No. 09-5983, 2011 U.S. Dist. LEXIS 162851, at

10  *6 (C.D. Cal. Aug. 15, 2011); *see also Renvall v. Albertsons Cos.*, No. 18-809, 2018 U.S. Dist.

11  LEXIS 129320, at *2 (S.D. Cal. Aug. 1, 2018) ("District courts have broad discretion to divide

12  discovery into multiple discrete phases when doing so enhances the efficiency of the litigation

13  and is otherwise reasonable under the circumstances.").

14  Based on this inherent authority, district courts regularly phase or bifurcate discovery in

15  the interest of convenience, expedition and economy in light of the potential benefits in a

16  particular case. *See, e.g., Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, No.

17  022523, 2004 U.S. Dist. LEXIS 4698, at *7 (N.D. Ill. Mar. 22, 2004) ("Because . . . the distinct

18  possibility exists that the issue of damages will never be reached, bifurcating discovery as to

19  liability from that of damages will serve the goals of convenience, expedition and economy.");

20  *Brittingham*, 2008 U.S. Dist. LEXIS 99076, at *6-7 ("If Plaintiffs cannot prove the merits of

21  their case by showing a willful violation by Cerasimo, then valuable time and resources will be

22  spent on discovery for the class certification issue when Plaintiffs' claim will be meritless.").

23  The initial phasing of discovery is appropriate in this case given that (1) the vicarious

24  liability issue presents a narrow and discrete avenue for discovery that does not overlap with

25  other issues, (2) Mr. Naiman's discovery requests go well beyond this threshold issue, and

26  (3) Mr. Naiman would face no prejudice from phasing discovery.

27

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
(206) 622-3150 FAX: (206) 757-7700

1. **Mr. Naiman's Action Presents Threshold Dispositive Vicarious Liability Issues.**

Given the specialized theory of "agency" Mr. Naiman relies upon, this action calls out for an orderly phasing of discovery limited to establishing or refuting vicarious liability. This issue is narrow and particularly appropriate for limited adjudication at the outset.

The TCPA provides that it is "unlawful for any person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). It is undisputed that Blue Raven did not call Mr. Naiman; one of its vendors did. Although the TCPA "does not explicitly provide for recovery under a vicarious liability theory," the Federal Communications Commission (the federal agency charged with rule making authority over the TCPA) expanded liability to non-dialers in certain circumstances. *See In re DISH Network, LLC*, 28 FCC Rcd 6574, 6587, 2013 FCC LEXIS 2057, at *43-45 (F.C.C. May 9, 2013).

In determining whether a defendant may be vicariously liable for TCPA violations of another, courts rely on the federal common law of agency. *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014) ("[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller."). The federal common law recognizes three discrete means by which a party may be held liable for the acts of another: (1) actual authority; (2) apparent authority; and (3) ratification. *See id.* at 878.

*First*, actual authority is the classic definition of agency. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Makaron v. GE Sec. Mfg.*, No. 14-1274, 2015 U.S. Dist. LEXIS 75240, at *16 (C.D. Cal. May 18, 2015) (citing *Sun Microsystems Inc. v. Hynix*

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
(206) 622-3150 FAX: (206) 757-7700

1    *Semiconductor Inc.*, 622 F. Supp. 2d 890, 899 (N.D. Cal. 2009)). "A key requirement of classic

2    common law agency is that the principal is 'in control' of the agent's actions." *Id.* at *17.

3         *Second*, apparent authority "is the power held by an agent or other actor to affect a

4    principal's legal relations with third parties when a third party reasonably believes the actor has

5    authority to act on behalf of the principal and that belief is traceable to the principal's

6    manifestations." *Makaron*, 2015 U.S. Dist. LEXIS 75240, at *20. Apparent authority "cannot

7    be established merely by showing that [the alleged agent] claimed authority or purported to

8    exercise it," [r]ather, "it is only established 'by proof of something said or done by the [alleged

9    principal], on which [the plaintiff] reasonably relied.'" *Id.* at *20-21 (quoting *NLRB v. Dist.

10   Council of Iron Workers of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir.1997)).

11        *Third*, ratification is "the affirmance of a prior act done by another, whereby the act is

12   given effect as if done by an agent acting with actual authority." *Kristensen v. Credit Payment

13   Servs.*, 879 F.3d 1010, 1014 (9th Cir. 2018). "Although a principal is liable when it ratifies an

14   originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification

15   can have no meaning without it." *Makaron*, 2015 U.S. Dist. LEXIS 75240, at *27 (quoting

16   *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003)). Even if a principal ratifies an agent's act,

17   "[t]he principal is not bound by a ratification made without knowledge of material facts about the

18   agent's act unless the principal chose to ratify with awareness that such knowledge was lacking."

19        These three theories present insular and discrete areas for discovery in this case. The

20   resolution of these issues will center on inquiries into Blue Raven's "control" over Renovation's

21   actions, Blue Raven's "manifestations" to Plaintiff, and Blue Raven's "knowledge" about

22   Renovation's acts. Blue Raven has already agreed to produce the necessary documents relating

23   to these questions. (*See* Moon Decl., Ex. B at p. 42-48, 51-67 (Response to Request for

24   Production No. 3-6, 9-19) (agreeing to produce documents relating to Renovation and Plaintiff

25   but not documents solely relating to other vendors and other putative class members).)

26

27

2.   **Mr. Naiman's Discovery Goes Well Beyond the Dispositive Vicarious Liability Issues in this Case.**

Despite the initial vicarious liability hurdle Mr. Naiman's claims face, his early discovery requests go well beyond information necessary to decide that narrow issue. (*See* App'x A; Moon Decl., Ex. A at Interrogatory Nos. 2-4, p. 14 (seeking information about all vendors, including those who never called Plaintiff or had anything to do with the sole call about which he complains); *id.*, Ex. A at Req. for Production Nos. 6, 8, pp. 17-18 (seeking information regarding calls made to putative class members); *id.*, Ex. C at Schedule A at Req. No. 1, p. 81 (seeking "[a]ll documents reflecting any call" made by Renovation identifying the potential class members in this action); *id.*, Ex. D at Schedule A at Req. Nos. 1, 5, pp. 87-88 (seeking identifying information and written consents for putative class members).)

All of those requests may be rendered moot depending on how the vicarious liability issue plays out. Indeed, courts routinely grant summary judgment in TCPA cases on threshold vicarious liability issues based on plaintiffs' consistent inability to meet their burden. *See, e.g.*, *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1012-13 (9th Cir. 2018) (affirming district court's grant of summary judgment based on plaintiff's failure to establish a genuine issue of material fact as to defendant's liability under the TCPA pursuant to a ratification theory of agency); *accord Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449-53 (9th Cir. 2018); *In re Monitronics Int'l, Inc.*, 223 F. Supp. 3d 514, 520-28 (N.D. W. Va. 2016); *Zarichny v. Complete Payment Recovery Servs.*, 80 F. Supp. 3d 610, 619 (E.D. Pa. 2015).

Bifurcation is particularly appropriate in these circumstances where "a single issue could be dispositive of the case or is likely to lead the parties to negotiate a settlement, and resolution of it might make it unnecessary to try the other issues in the litigation." *Dees v. Allstate Ins. Co.*, No. 12-0483, 2012 U.S. Dist. LEXIS 127032, at *3 (W.D. Wash. Sep. 5, 2012); *see, e.g.*, *Ocean Atl.*, 2004 U.S. Dist. LEXIS 4698, at *6-7 (noting defendants intended to file motion for summary judgment on issue of liability and recognizing "should plaintiff fail to establish liability in this case, the savings in time and costs with regard to discovery and discovery management

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
(206) 622-3150 FAX: (206) 757-7700

13

1   would benefit both the parties and the Court"); *Moreno v. NBCUniversal Media, LLC*, No. 13-

2   1038, 2013 U.S. Dist. LEXIS 198660, at *7 (C.D. Cal. Sep. 30, 2013) (granting motion to

3   bifurcate liability and damages discovery and stay discovery of non-liability issues until after

4   court order on motion for summary judgment on liability issues); *Stavroff v. Midland Credit*

5   *Mgmt.*, No. 05-127, 2005 U.S. Dist. LEXIS 11640, at *6-7 (N.D. Ind. June 8, 2005) ("[I]f

6   Plaintiff cannot prove the merits of his case, then valuable time and resources will be exhausted

7   in trying to resolve the class certification issue.").

8          As numerous courts have recognized, this "gatekeeping" function is particularly

9   important in the TCPA context given the availability of narrow dispositive issues that could

10   avoid the need for much broader and wide-scale discovery into unrelated subject matters or class

11   issues. *See Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, No. 12-2132, 2014 U.S. Dist.

12   LEXIS 13523, at *11-12 (D.N.J. Feb. 4, 2014) (granting motion to bifurcate in a TCPA class

13   action where "a narrow, potentially dispositive issue exist[ed] concerning whether the faxes sent

14   [were] informational and therefore not actionable under the TCPA," and this issue was "totally

15   distinct from class issues"); *Loreaux v. ACB Receivables Mgmt.*, No. 14-710, 2015 U.S. Dist.

16   LEXIS 112250, at *11 (D.N.J. Aug. 25, 2015) (same); *Leschinsky v. Inter-Continental Hotels*

17   *Corp.*, No. 15-1470, 2015 U.S. Dist. LEXIS 140535, at *1 (M.D. Fla. Oct. 15, 2015) (granting

18   motion to bifurcate and initially limiting discovery to whether calls named plaintiff received

19   were dialed manually and how many calls she received); *Boehm v. Pure Debt Solutions Corp.*,

20   No.: 19-117, 2019 U.S. Dist. LEXIS 177676 (D. Neb. Oct. 11, 2019) (noting in putative TCPA

21   class action that "this Court issued an order limiting discovery at this time by the Parties to the

22   individual claims of the Plaintiff . . . essentially bifurcating merits and class certification

23   discovery").

24          Narrowed discovery to evidence necessary to adjudicate this threshold issue may

25   potentially avoid expansive and expensive discovery affecting Blue Raven and third parties.  In

26   particular, as explained to Mr. Naiman, Renovation contracted with Blue Raven to provide its

27   lead-generation services to Defendant as an independent contractor and represented that it fully

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
(206) 622-3150 FAX: (206) 757-7700

complied with all applicable laws, including the TCPA, in seeking leads or prospects for

Defendant. (Moon Decl., Ex. B at pp. 29-30.) Renovation further contractually agreed to call

only those who had consented to be called and not to use automated dialing systems. (*Id.*) To

the extent Renovation called Mr. Naiman without his consent and through use of an automated

system, it did so in direct violation of its contractual obligations with Blue Raven. As will be

established on Blue Raven's motion for summary judgment, vicarious liability cannot be

premised on so thin a reed given Blue Raven's lack of control over Renovation's actions, lack of

any manifestation to Mr. Naiman, and lack of any ratification of Renovation's actions.

### 3. Mr. Naiman Would Suffer No Prejudice by Phasing Discovery.

Last, Mr. Naiman would suffer no prejudice by Blue Raven's proposal to phase

discovery—which would merely delay potentially unnecessary discovery until Mr. Naiman

passes the initial hurdle of establishing Blue Raven's vicarious liability. During the parties' meet

and confer efforts, counsel for Mr. Naiman raised concerns about the preservation of documents

during any potential phasing period. (*See* Moon Decl. ¶ 7.) In response, counsel for Blue Raven

proposed to segregate and protect evidence potentially relevant to claims of putative class

members during the vicarious liability phase of this action. (*Id.*) Counsel for Mr. Naiman

disagreed with the phasing proposal and rejected the segregation compromise. (*Id.*)

Given the lack of potential prejudice and the dispositive nature of the discrete vicarious

liability inquiry, the Court should initially limit discovery to the vicarious liability issue, which

may prove dispositive in this action and eliminate the need for further proceedings and

discovery.

### B. In the Alternative, the Court Should Limit Discovery to Issues Relevant to Plaintiff's Individual Claims or Class Certification.

As an alternative to an initial discovery phase to decide threshold vicarious liability

issues, Blue Raven proposes to limit discovery to Mr. Naiman's individual claims and to issues

necessary for his anticipated class certification motion. This alternative phasing proposal would

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
(206) 622-3150 FAX: (206) 757-7700

1    also potentially avoid the need for wasteful discovery into the individual claims of putative class

2    members before a class is certified in this case.

### 1.    Before Certification, Plaintiffs Have a Limited Right to Discovery.

4    In a proposed class action, the parties should not engage in class-wide merits discovery

5    until the Court determines whether to accord class treatment to the case.  To do otherwise risks

6    wasting the Court's and the litigants' resources on expensive and ultimately useless proceedings.

7    Allowing broad merits discovery before certification would "impose[ ] on defendants one

8    of the major burdens of defending [an] omnibus class action prior to any determination that the

9    action [is] maintainable as such." *Stewart v. Winter,* 669 F.2d 328, 332 (5th Cir. 1982).  "If class

10   certification is denied, the scope of permissible discovery may be significantly narrowed; if a

11   class is certified, defining that class should help determine the limits of discovery on the merits."

12   *Am. Nurses' Ass'n v. Illinois,* No. 84-4451, 1986 U.S. Dist. LEXIS 20447, at *9 (N.D. Ill. Sept.

13   12, 1986) (merits discovery should not proceed until class certification had been decided).  For

14   that reason, the Ninth Circuit has held that the plaintiff bears the burden of showing that

15   discovery is likely to substantiate the class allegations.  *See Mantolete v. Bolger*, 767 F.2d 1416,

16   1424-25 (9th Cir. 1985); *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977)

17   ("where the plaintiffs fail to make even a prima facie showing of Rule 23's prerequisites, as we

18   find here, the burden is on the plaintiff to demonstrate that discovery measures are likely to

19   produce persuasive information substantiating the class action allegations").

20   Courts therefore routinely hold class-wide merits discovery in abeyance pending class

21   certification.  *See Elliot v. ITT Corp.,* 1992 U.S. Dist. LEXIS 3108, at *12-*13 (N.D. Ill. Mar.

22   16, 1992) ("discovery should be allowed *so long as it is relevant to the class issues under Rule*

23   *23*") (emphasis added); *Dickerson v. United States Steel Corp.,* 18 F.R. Serv. 2d 554, 555 (E.D.

24   Pa. 1974) ("defendant need only answer those interrogatories addressed to the class action

25   question which are relevant and which are not unduly burdensome"); *Kwan v. Clearwire Corp.*,

26   No. 09-1392, Order Granting Motion for Protective Order (W.D. Wash. Jan. 4, 2011) (granting

27   protective order precluding discovery into issues unrelated to individual claims or class

DAVIS WRIGHT TREMAINE LLP

920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
(206) 622-3150 FAX: (206) 757-7700

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
(206) 622-3150 FAX: (206) 757-7700

1  certification issues).  In particular, courts often stay discovery that, in the court's "sound

2  judgment," is not "necessary or helpful" to a class determination, *Stewart,* 669 F.2d at 331, or

3  that would unduly delay the class proceedings.  *See, e.g., Washington v. Brown & Williamson*

4  *Tobacco Corp.,* 959 F.2d 1566, 1570-71 (11th Cir. 1992) ("postpon[ing] classwide discovery on

5  the merits . . . make[s] early class determination practicable and . . . best serve[s] the ends of

6  fairness and efficiency"); *Plumer v. Chicago Journeyman Plumbers' Local No. 130,* 77 F.R.D.

7  399, 402 (N.D. Ill. 1977) (allowing merits discovery would undermine Rule 23's "command . . .

8  that the class determination should be made as early as possible") (citing Manual for Complex

9  Litigation § 1.40 (1977)).[1]

10        The parties will know soon enough whether this case will proceed as a class action

11  encompassing everyone Renovation called in efforts to generate leads for Blue Raven or as an

12  individual claim of Mr. Naiman.  It makes little sense to burden the parties, third-parties, and the

13  court with pre-certification discovery issues that cannot have any bearing on the case unless and

14  until the Court certifies a class.

15        **2.     Plaintiff's Discovery Mostly Seeks Information and Documents**
             **Irrelevant to His Individual Claims or Class Certification Issues.**
16

17        The class action rules rest on the premise that a court can decide the claims of an entire

18  class based on disposition of the named representative's claims alone.  The primary virtue of the

19  proceeding thus lies in the fact that a court can decide a large group of claims without examining

20  each class member's individual circumstances.

21        Federal Rule of Civil Procedure 23's class certification requirements—such as the

22  typicality, commonality, adequacy and numerosity requirements—speak to this function.  "The

23      [1] Courts routinely postpone merits discovery pending a determination of whether a case
24  should proceed as a class action. *See, e.g., Eggleston v. Chicago Journeymen Plumbers' Local
    Union No. 130,* 657 F.2d 890, 892 (7th Cir. 1981); *Mid-West Paper Prods. Co. v. Cont'l Grp., Inc.,*
25  596 F.2d 573, 576 (3d Cir. 1979); *Converse v. Ameritech Corp.,* No. 95-141, 1996 U.S. Dist.
    LEXIS 15603, at *24 (W.D. Mich. Sept. 26, 1996); *In re Norplant Contraceptive Prods. Liab.*
26  *Litig.,* No. 1038, 1995 U.S. Dist. LEXIS 3454, at *9 (E.D. Tex. Feb. 22, 1995); *Schwartzbauer v.
    Lead Indus. Ass'n, Inc.,* No. 91-3948, 1993 U.S. Dist. LEXIS 4868, at *5 (E.D. Pa. Apr. 14, 1993);
27  *Brooks v. S. Bell Tel & Tel. Co.,* 133 F.R.D. 54, 55 (S.D. Fla. 1990).

1  premise of the typicality requirement is simply stated: 'as goes the claim of the named plaintiff,

2  so go the claims of the class.' Where the premise does not hold true, class treatment is

3  inappropriate." *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 412 (C.D. Cal. 2000) (quoting

4  *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)). To satisfy the adequacy

5  requirement, a class representative must "'possess the same interest and suffer the same injury'

6  as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594-95 (1997). Where

7  "the class representative's claims are not typical of the class, the representative cannot

8  adequately protect the interests of the absent class members." *Harding v. Tambrands Inc.*, 165

9  F.R.D. 623, 628 (D. Kan. 1996).

10       Mr. Naiman's class certification motion will therefore present the question of whether

11  this Court can decide his claims and thereby simultaneously decide the claims of absent class

12  members without having to look at their individual account records or decide questions revolving

13  around their particular circumstances. *See, e.g., Richter v. Banc One Mortgage Corp.*, No. 97-

14  2195, 1999 U.S. Dist. LEXIS 16074, at *30 n.13 (D. Ariz. Mar. 19, 1999), *aff'd* 292 F.3d 1004

15  (9th Cir. 2002) (class action not viable where court must examine each transaction). The

16  discovery in question to the extent it seeks the minutiae of putative class members' claims, such

17  as calling records and consent records, has no bearing on either Mr. Naiman's individual claim,

18  asserted in his capacity as an individual called by Renovation, or on class certification, which

19  will turn on whether he asserts claims typical of a proposed class of customers.

20       As explained above, Mr. Naiman's requests for information and logs relating to all calls

21  based on behalf of Blue Raven—whether by Renovation or other vendors—is overbroad. (*See,*

22  *e.g.*, Moon Decl., Ex. A at Interrogatory Nos. 2-4, 6, 8, at pp. 14-15; *id.*, Ex. C at Schedule A at

23  Req. No. 1, at p. 81; *id.*, Ex. D at Schedule A at Req. Nos. 1, 5, at pp. 87-88.)

24       These discovery requests seek details for every call, including the dates of the calls, the

25  number of calls placed, the outgoing phone numbers and telephone companies used, every

26  document that contains the phone numbers called, every document that contains the names and

27  addresses of class members, and so on. (*Id.*) This information has no capacity to shed light on

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
(206) 622-3150 FAX: (206) 757-7700

18

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
(206) 622-3150 FAX: (206) 757-7700

1    Mr. Naiman's individual claims or on issues of commonality, typicality, or adequacy.  The

2    numerosity issue will not be a disputed issue on the anticipated class certification motion—Blue

3    Raven agrees that the proposed "class is so numerous that joinder of all members is

4    impracticable."  *See* Fed. R. Civ. P. 23(a)(1).  In any event, customer identities and call details

5    have no bearing on the question whether it would be impracticable to join in a single proceeding

6    all putative class members.  Nor does this information shed light on typicality or adequacy since

7    those issues will turn on whether a non-customer such as Mr. Naiman can represent the interests

8    of, or has claims typical of, the putative class of others Renovation called in its efforts to

9    generate leads for Blue Raven.

10           Courts regularly have reached the same conclusion.  Most notably, in *Oppenheimer*

11   *Fund, Inc. v. Sanders*, 437 U.S. 340, 351-54 (1978), the Supreme Court held that outside the

12   class-notice context, the production of information that contains class members' identifying

13   information normally was not "within the scope of legitimate discovery."  Consistent with

14   *Oppenheimer*, "[c]ourts have ordinarily refused to allow discovery of class members' identities

15   at the precertification stage out of concern that plaintiffs' attorneys may be seeking such

16   information to identify potential new clients, rather than to establish the appropriateness of

17   certification."  *Dziennik v. Sealift, Inc.*, No. 05-4659, 2006 U.S. Dist. LEXIS 33011, at *3

18   (E.D.N.Y. May 23, 2006) (denying production of unredacted documents identifying class

19   members); *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (denying

20   request for contact information of absent members during precertification discovery).  The

21   proposition is well settled and generally recognized.  *See* 2 McLaughlin on Class Actions § 11.1

22   (4th ed. 2007) ("to avoid converting the class action mechanism into a tool to identify potential

23   new clients, courts ordinarily will not permit putative class counsel to obtain discovery of class

24   members' identities at the precertification stage").[2]

25   _____

26           [2] *See also Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 416 (9th Cir. 1985) (affirming denial
     of a request for production of the names of putative class members "to solicit support" for a
     plaintiffs efforts to certify a class); *In re Mortgagors of Temple-Inland Mortgage Corp.*, No. 99-
27   4633, 2001 U.S. Dist. LEXIS 1918, at *4 (E.D. Pa. Jan. 24, 2001); *In re Air Disaster Near*

1      Given that much of the requested information has no bearing on Mr. Naiman's individual

2   claims as a non-customer and only tangential relevance, at best, to Rule 23 issues, the Court

3   should grant a protective order.

4   **IV.   CONCLUSION**

5      For the foregoing reasons, the Court should grant Blue Raven's Motion and limit

6   discovery in this action to the threshold vicarious liability issues.  In the alternative, the Court

7   should limit discovery to Plaintiff's individual claims and issues relating to class certification

8   prior to the certification of a class.

9

10   Dated:  January 10, 2020

11                                    /s/ Kenneth E. Payson
                                     Kenneth E. Payson (admitted *pro hac vice*)
12                                    Davis Wright Tremaine LLP
                                     920 Fifth Ave., Suite 3300
13                                    Seattle, WA 98104
                                     (206) 757-8126
14                                    kennethpayson@dwt.com

15                                    James H. Moon (admitted *pro hac vice*)
                                     Davis Wright Tremaine LLP
16                                    865 S. Figueroa St., Suite 2400
                                     Los Angeles, CA 90017
17                                    (213) 633-6819
                                     jamesmoon@dwt.com
18

19

20

21

22

23   *Honolulu, Haw.*, 792 F. Supp. 1541, 1551 (N. D. Cal. 1990) (rejecting request by plaintiffs for
     production of the list of airline passengers; "short of plaintiffs' satisfying the requirements for
24   class certification . . . it is not appropriate for this court to help plaintiffs' counsel round up more
     clients"); *Flanigan v. Am. Fin. Sys. of Ga.*, 72 F.R.D. 563, 563 (M.D. Ga. 1976) ("Rule 23
25   should not be used as a device to enable client solicitation"); *Crabtree v. Hayden, Stone Inc.*, 43
     F.R.D. 281, 283 (S.D.N.Y. 1967) ("the purpose of the pre-trial discovery rules . . . is to enable the
26   parties to prepare for trial with respect to their own bona fide existing claims, not to determine
     whether third parties may have similar claims").
27

**DAVIS WRIGHT TREMAINE LLP**
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
(206) 622-3150 FAX: (206) 757-7700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Jeff Silvestri (Nevada Bar No. 5779)
McDonald Carano LLP
2300 W. Sahara Avenue, Suite 1200
Las Vegas, NV 89102
(702) 873-4100
*jsilvestri@mcdonaldcarano.com*

*Attorneys for Defendant Blue Raven Solar, LLC*

DAVIS WRIGHT TREMAINE LLP

920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
(206) 622-3150 FAX: (206) 757-7700

1

### CERTIFICATE OF SERVICE

2       I hereby certify that on January 10, 2020, I caused the foregoing to be electronically filed

3  with the Clerk of the Court using the CM/ECF system which will send notifications of such

4  filing to all counsel of record as of the time of the filing.

5

6                                          /s/ Kenneth E. Payson
                                          Kenneth E. Payson

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
(206) 622-3150 FAX: (206) 757-7700

22

# Exhibit D

| | |
|---|---|
| **From:** | cmecf@nvd.uscourts.gov |
| **Sent:** | Tuesday, January 14, 2020 1:24 PM |
| **To:** | cmecfhelpdesk@nvd.uscourts.gov |
| **Subject:** | Activity in Case 2:19-cv-01643-JAD-EJY Naiman v. Blue Raven Solar Order on Discovery Plan and Scheduling Order |

[EXTERNAL]

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

United States District Court

District of Nevada

## Notice of Electronic Filing

The following transaction was entered on 1/14/2020 at 1:23 PM PST and filed on 1/14/2020
**Case Name:** Naiman v. Blue Raven Solar
**Case Number:** 2:19-cv-01643-JAD-EJY
**Filer:**
**Document Number:** 29(No document attached)

Docket Text:
**MINUTES OF PROCEEDINGS - Motion Hearing held on 1/14/2020 before Magistrate Judge Elayna J. Youchah. Crtrm Administrator:** *E. Garcia*; **Pla Counsel:** *Jonathan Misny*; **Def Counsel:** *Kenneth Payson and Jeffrey Silvestri*; **Recording start and end times:** *10:23a.m. - 10:49a.m.*; **Courtroom:** *3C*;

The Court makes preliminary remarks and hears representations of counsel as to [17] Joint Stipulated Discovery Plan and Scheduling Order.

The Court grants Defendant's request for phased discovery. The first phase of discovery to vicarious liability as stated on the record.

To the extent that plaintiff seek call records, Plaintiff confirms Ytel has such records, which Ytel is prepared to produce but for the pending Motion for Protective Order filed by Defendant.

Defendant shall provide a copy of this Order to Ytel. Ytel shall produce all records requested by Plaintiff to Defendant within 14 days of this Order. Defendant shall make a mirror image of the records received from Ytel and produce redacted records to Plaintiff as stated on the

1

record. Defendant shall retain the records produced by Ytel in their original format such that they may be produced at a later time should this case continue after phase I dispositive motions are decided.

Defendant shall obtain records as stated on the record from Renew Solar Power in preparation for production of documents responsive to document requests by Plaintiff, if any.

Consistent with the above order, ECF No. 17 is DENIED.

The Court extends discovery to May 29, 2020. Parties are to file with this Court a revised order with all new dates as discussed in open court within 10 days of the date of this Order.

The Court finds all issues raised by Defendant Blue Raven Solar in its Motion for Protective Order (ECF No. 27) are resolved as stated on the records. Accordingly, the Motion for Protective Order (ECF No. 27) is DENIED as moot.

(no image attached) (Copies have been distributed pursuant to the NEF - EMG)

**2:19-cv-01643-JAD-EJY Notice has been electronically mailed to:**

Jeffrey A Silvestri     jsilvestri@mcdonaldcarano.com, bgrubb@mcdonaldcarano.com, cgerard@mcdonaldcarano.com, ksurowiec@mcdonaldcarano.com

Ogonna M Brown     OBrown@lrrc.com, jsiatta@lrrc.com, kpimentel@lrrc.com

Kenneth E. Payson     kennethpayson@dwt.com, SEADocket@dwt.com, daniellegarrett@dwt.com

James H. Moon     jamesmoon@dwt.com, frankromero@dwt.com

Brian K. Murphy     murphy@mmmb.com, anthony@paronichlaw.com, murphy@ecf.courtdrive.com, tiffany@ecf.courtdrive.com, tiffany@mmmb.com

Jonathan P. Misny     misny@mmmb.com, misny@ecf.courtdrive.com, tiffany@ecf.courtdrive.com, tiffany@mmmb.com

**2:19-cv-01643-JAD-EJY Notice has been delivered by other means to:**